UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
APTIVE ENVIRONMENTAL, LLC,

                            Plaintiff,                   **REPORT AND**
-against-                                    **RECOMMENDATION**

VILLAGE OF EAST ROCKAWAY, NEW       19-CV-3365 (SJF) (SIL)
YORK,

                            Defendant.
------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint dated June 6, 2019, later modified by an Amended Complaint dated June 12, 2019 and again by a Second Amended Complaint dated December 13, 2019, Aptive Environmental, LLC ("Aptive" or "Plaintiff") commenced this action against the Village of East Rockaway ("Defendant" or "the Village"), alleging violations of the First and Fourteenth Amendments to the United States Constitution, and seeking a declaratory judgment and permanent injunction in connection with these violations. *See* Complaint ("Compl."), Docket Entry ("DE") [1]; Amended Complaint ("Am. Compl."), DE [12]; Second Amended Complaint ("SACC"), DE [44]. Presently before the Court, on referral from the Honorable Sandra J. Feuerstein for report and recommendation, are: (i) Defendant's motion for summary judgment ("Defendant's Motion"), DE [55]; and (ii) Plaintiff's cross-motion for summary judgment ("Plaintiff's Motion"), DE [56], both seeking relief as a matter of law, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").

For the reasons set forth herein, the Court respectfully recommends: (i) denying Defendant's Motion in its entirety; and (ii) granting Plaintiff's Motion in its entirety.

## I. Background

### A. Relevant Facts

The following facts are taken from the parties' pleadings, declarations, exhibits and respective Local Rule 56.1 statements. Except where indicated, these facts are not in dispute.[1]

Aptive is a Utah limited liability company that performs pest control services, with offices throughout the United States. *See* SACC ¶ 10; Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1"), DE [56-3], ¶ 1. Plaintiff serves markets throughout New York, including the Village, and its sales are made primarily through door-to-door solicitations by its sales representative employees. Pl. 56.1 ¶¶ 1-2. Aptive requires all sales representatives to apply for, and receive, solicitation licenses in any city, town or village that requires solicitors to possess such licenses before commencing sales work. *See id.* ¶ 4.

Prior to June 2019, the Village enforced a 5:00 p.m. solicitation curfew and a $2,500 bond on solicitation, as well as a $20 fee for an annual solicitor license, via Chapter 171 of the Code of the Incorporated Village of East Rockaway ("Village Code"). *See id* ¶¶ 6-7; SACC Exhibit ("Ex.") O, DE [44-3]. As a result of Judge Feuerstein's July 16, 2019 order granting Plaintiff a preliminary injunction enjoining

---

[1] As discussed below, Defendant failed to provide a statement of material facts pursuant to Fed. R. Civ. P. 56.1, as well as a counterstatement of material facts in response to Plaintiff's statement of material facts pursuant to Fed. R. Civ. P. 56.1 in support of its motion. As such, all uncontroverted facts in Plaintiff's statement of material facts are deemed admitted.

2

the Village from enforcing then-sections 171-14, 171-16 and 171-18 of the Village Code, Defendant amended Chapter 171 in September 2019. *See* Pl. 56.1 ¶¶ 8-9; July 16, 2019 Order, DE [24]. The September 2019 amendment removed the curfew and bond requirements under Chapter 171 and added a $200 fee for solicitor licenses (the "Fee"). *See* Pl. 56.1 ¶ 9; SACC Ex. R, DE [44-6]. Though subsequently further amended, the current Village Code still includes the Fee, which is payable by each applicant for a license. *See* Pl. 56.1 ¶ 10; Defendant's Motion ("Def. Mot.") Ex. A, DE [55-2].

Under the current Village Code, Section 171-3 requires that all applications "be accompanied by a $200 fee payable to the clerk" and Section 171-5(A) states that license approval is subject to "payment by the applicant of the license fee of $200.00." *See* Pl. 56.1 ¶¶ 11-12; Def. Mot. Ex. A; SACC Ex. R, 3-4. Aptive is a "Solicitor," as defined by Chapter 171, and is therefore required to pay the Fee before conducting door-to-door sales. *See* Pl. 56.1 ¶ 13; SACC Ex. R, 2.

According to the Village's local law filing with the New York State Department of State, the Fee is to be applied to: (1) processing costs; (2) criminal background checks; (3) maintenance of the "No Knock" list; and (4) code enforcement. *See* Def. Mot. Ex. A. Defendant did not receive estimates from background check companies to aid in its determination of the amount of the Fee, nor did it research the costs of enforcement concerning solicitation or administrative costs related to solicitor licenses. *See* Pl. 56.1 ¶¶ 20, 23-24. As the Village had not yet issued any solicitor

3

licenses at the time of filing, it could not estimate the amount of time the issuance of a solicitor license would take. *See id.* ¶ 21.

Plaintiff alleges that Defendant's adoption of an ordinance requiring individuals who wish to engage in door-to-door solicitation to pay a fee violates the First Amendment of the United States Constitution, as it effectively snuffs out Aptive's right to exercise its free speech by way of door-to-door sales in the Village through a prohibitively expensive Fee that operates as a virtual ban on Aptive's solicitation. *See id.* ¶¶ 15-17; Plaintiff's Motion ("Pl. Mot."). Plaintiff further maintains that the Fee restricts the free speech rights of Village residents who do not object to door-to-door solicitation and wish to learn more about Aptive's services. *See* Pl. 56.1 ¶ 19. The Village contends that the Fee does not violate the First Amendment. *See* Def. Mot.

### B. Procedural History

Based on the above, Plaintiff commenced this action on June 6, 2019 against the Village. *See* Compl. The Complaint and Amended Complaint – seeking declaratory and injunctive relief along with damages and attorneys' fees in connection with the Fee – allege that the solicitation ban, bond and curfew violated the First and Fourteenth Amendments to the United States Constitution.

On June 12, 2019, Aptive filed an Amended Motion for a Temporary Restraining Order. *See* DE [13]. Judge Feuerstein entered an Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction on June 14, 2019, directing Defendant to show cause why an order should not be entered preliminarily

4

enjoining and restraining the Village from enforcement of the Village Code Sections at issue.  *See* DE [14].  Following Defendant's Response to the Order to Show Cause, DE [16], and its Answer to Plaintiff's Amended Complaint, DE [23], Judge Feuerstein granted Plaintiff's application for a preliminary injunction on July 16, 2019, enjoining Defendant from enforcing the relevant sections of the Village Code.  *See* DE [24].

This resulted in Defendant revising its Village Code to add the $200 fee, and on October 28, 2019, Plaintiff moved to further amend its Complaint as a result of this code modification.  *See* DE [40].  On December 11, 2019, this Court granted Plaintiff's motion for leave to amend.  *See* DE [43].  Plaintiff filed its Second Amended Complaint on December 13, 2019, alleging that the Fee violates the First and Fourteenth Amendments of the United States Constitution, and seeking declaratory relief and a permanent injunction.  Discovery followed.

On May 11, 2020, the parties filed cross-motions for summary judgment.  *See* Def. Mot.; Pl. Mot.  Each party opposes the other's motion.  *See* Plaintiff's Memorandum of Law in Support of its Cross-Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Pl. Mem."), DE [55-14], [56-1]; Defendant Village of East Rockaway New York's Reply Memorandu[m] of Law in Support of Motion for Summary Judgment ("Def. Opp."), DE [56-5].  Judge Feuerstein referred the motions to this Court for report and recommendation.  *See* May 11, 2020 and May 12, 2020 Orders Referring Motions.

5

## II. Legal Standard for Summary Judgment

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment").

## III. Discussion

Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends: (i) denying Defendant's Motion in its entirety; and (ii) granting Plaintiff's Motion in its entirety.

### A. <u>Procedural Defects</u>

As an initial matter, the Court has determined that there are several procedural defects in Defendant's papers. As set forth above in the margin, Defendant failed to file a 56.1 statement of undisputed material facts as required by Local Civil Rule 56.1(a) ("Rule 56.1 Statement"). Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. *See* Local Rule 56.1(a); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 72 (2d Cir. 2001). The Rule further requires that the Rule 56.1 Statement contain

7

citations to admissible evidence supporting each asserted material fact. Local Rule 56.1(d); *see Giannullo*, 322 F.3d at 143 (reversing the district court's grant of summary judgment because there was insufficient evidence in the record to support certain critical assertions in the moving party's statement of material facts); *see also Watt v. New York Botanical Garden*, No. 98 CV 1095, 2000 WL 193626, at *1 n. 1 (S.D.N.Y. Feb. 16, 2000).

In the instant case, the Village failed to file a Rule 56.1 Statement of Material Facts in support of its motion for summary judgment. That failure alone would justify denial of the government's motion. Local Rule 56.1(a); *see also United States v. Kadoch*, No. 96 CV 4720 CBA, 2012 WL 716899, at *1–2 (E.D.N.Y. Feb. 17, 2012), *report and recommendation adopted*, No. 96-CV-4720 CBA CLP, 2012 WL 716894 (E.D.N.Y. Mar. 5, 2012); *Searight v. Doherty Enterprises, Inc.*, No. 02 CV 0604, 2005 WL 2413590, at *1 (E.D.N.Y. Sept. 29, 2005) (denying motion for summary judgment for failure to submit a 56.1 Statement). However, district courts are given "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73; *Healthfirst, Inc. v. Medco Health Solutions, Inc.*, No. 03 CV 5164, 2006 WL 3711567, at *5 (S.D.N.Y. Dec. 15, 2006). Where parties fail to file Rule 56.1 statements, the court may choose to accept all factual allegations of the opposing parties as true for the purposes of deciding the motion for summary judgment, or may alternately "opt to conduct an assiduous review of the record." *Holtz*, 258 F.3d at 73 (internal quotations and citations omitted); *see also Sawyer v. Wight*, 196 F. Supp. 2d 220, 225 (E.D.N.Y. 2002) (noting that where Rule 56.1 has not

been properly followed, courts "may discretionarily choose to search the record of their own accord") (citations omitted).

Not only did Defendant fail to file its own Rule 56.1 Statement, it also failed to file a counterstatement in response to Plaintiff's Rule 56.1 Statement. The party opposing a motion for summary judgment is also required to submit a counterstatement controverting the moving party's 56.1 Statement, indicating which facts are in dispute that would require a trial. *See* Local Rule 56.1(b); *Paige-Bey v. Lacoste*, No. 13CV7300, 2020 WL 1643660, at *1 (E.D.N.Y. Mar. 31, 2020). Under the Local Rule, "[i]f the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo*, 322 F.3d at 140 (citing Local Rule 56.1(c)). Where the party opposing a motion for summary judgment fails to submit a proper counterstatement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts. *See, e.g.,* Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC*, No. 09-CV-2614, 2011 WL 6329194, at *4 (E.D.N.Y. Dec. 16, 2011) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the

9

facts asserted in the statement are uncontested and admissible."); *Feis v. United States*, No. 07 Civ. 2706(JS), 2009 WL 2983026, at *1 n. 2 (E.D.N.Y. Sept.10, 2009), *aff'd in relevant part*, 394 Fed. App'x. 797, 799 (2d Cir.2010) (refusing to consider as "disputed" any of movant's Rule 56.1 statements supported by evidence, to which nonmovant objected without evidentiary support); *Transp. Ins. Co. v. AARK Const. Grp., Ltd.*, 526 F.Supp.2d 350, 354 n. 1 (E.D.N.Y. 2007) ("Where a responding party fails to submit a responsive Rule 56.1 Statement, the Court may deem admitted all facts in the movant's statement."); *AFL Fresh & Frozen Fruits & Vegetables, Inc.*, No. 06 Civ. 2142(GEL), 2007 WL 4302514, at *5 (S.D.N.Y. Dec.7, 2007) (movant's Rule 56.1 statements admitted "unless specifically controverted by a correspondingly numbered paragraph in the opposing party's Rule 56.1 statement and followed by citation to evidence." (emphasis in original) (citations and quotations omitted)).

Nevertheless, the Village's failure does not relieve Plaintiff "of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz*, 258 F.3d at 74; *see also Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) ("[T]he district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." (citing *Giannullo*, 322 F.3d at 142 (2d Cir. 2003)). Accordingly, the Court will only deem admitted those assertions in Aptive's Rule 56.1 Statement that are supported by admissible evidence.

More troubling to the Court, however, is the Village's use of attorney affidavits affixed to its summary judgment papers to add to and controvert facts Defendant previously testified to. *See* February 20, 2020 Affidavit of John E. Ryan in Support of Defendant's Motion for Summary Judgment ("Ryan Aff."), DE [55-1]; May 1, 2020 Reply Affidavit ("Ryan Reply Aff."), DE [55-15], [56-6]. An attorney's unsworn statements in a brief are not evidence. *See INS v. Phinpathya*, 464 U.S. 183, 188–89 n. 6, 104 S.Ct. 584 (1984). When an attorney makes statements under penalty of perjury in an affidavit or an affirmation, however, the statements do constitute part of the evidentiary record and must be considered. *See Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009).

Nevertheless, a party may not "create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts [the affiant's] previous deposition testimony." *Fei Long Zhang v. Alvarado*, No. 15CV4373, 2017 WL 6375732, at *1 n. 1 (E.D.N.Y. Dec. 12, 2017); *see also Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) ("The sham issue of fact doctrine prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony.") (internal quotation marks and citation omitted) (emphasis omitted); *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (examining omission in four-day deposition); *Martin v. City of New York*, 627 F.Supp. 892, 896 (E.D.N.Y. 1985) (examining direct contradiction between deposition and affidavit). "If a party who

has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Hayes*, 84 F.3d at 619. Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not "genuine" issues for trial. *Id.* There are two exceptions to this rule: when "an issue was not fully explored in the deposition, or the deponents' responses were ambiguous." *Brown v. Reinauer Transportation Companies, L.P.*, 788 F. App'x 47, 49 (2d Cir. 2019); *see also Giliani v. GNOC Corp.*, 04–CV–2935 (ILG), 2006 WL 1120602, at *3 (E.D.N.Y. Apr. 26, 2006) (citing *Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000)). Further, "where a party's conflicting affidavit statements are corroborated by other evidence, the affidavit may be admissible, since the concern that the affidavit is a 'sham' is alleviated." *Brown*, 788 F. App'x at 49.

Both affidavits submitted by the Village's attorney directly contradict the Village's Rule 30(b)(6) testimony and Defendant's discovery responses. The Village testified at deposition that it did not take estimates from background check companies to determine the cost for performing background checks for solicitor license applicants. *See* February 20, 2020 Village 30(b)(6) Deposition Transcript, Ex. A to Declaration of Clint Cowan ("Cowan Dec.") (DE [55-10], [56-2]), DE [55-11], at 118:14-119:9. Testimony from Defendant's 30(b)(6) deposition further evidences that the Village did not know, at the time of setting the Fee, how much time the issuance of a solicitation license would take, as it had not yet issued any licenses, and it did

12

not research the costs of enforcement relative to solicitation prior to setting the Fee. *Id.* at 28:20-29:9; 125:6-9. The Village also testified it did not perform any studies or analyses to support its estimates as to the Fee amount. *Id.* at 135:2-15.

Moreover, Aptive served Defendant with a number of interrogatories and requests for production relating to documents and communications the Village relied upon in determining the Fee. *See* Cowan Dec. Ex. B, DE [55-12], 4-7. Rather than object to the requests, Defendant responded that it had no responsive documents or communications, aside from the attorney work product of the Village attorney. *See* Cowan Dec. Ex. C, DE [55-13], 1-4. In response to Interrogatory No. 5, asking Defendant to identify "each expense incurred by the Village in processing, investigating, and denying a solicitor license application, listing the approximate dollar amount of each," the Village responded: (a) Criminal background check ($100); (b) Intake/review of application, etc. ($50 to $75); (c) Maintenance of No-Knock List ($50 to $75); and (d) Enforcement ($50 to $75). *See* Cowan Dec. Ex. C, 2.

The Village testified as to its lack of communications or documents evidencing research, studies, investigations, analyses, accounting reports, memoranda or other data that the Village relied upon in determining the costs for processing solicitor licenses. *See* Cowan Dec. Ex. A at 75:13-18. It further conceded its projections for administrative costs for solicitation licenses were not based on studies. *See id.* at 135:2-15.

The Village also testified at deposition that the Village Clerk is the most knowledgeable individual as to administrative expenses incurred in connection with

13

solicitation, but that Defendant did not consult the Village Clerk's office regarding administrative costs associated with licensing solicitors prior to passing the $200 Fee. *See id.* at 60:2-63:13. In fact, the Village testified it did not consult any documents or individuals beyond the Village attorney, on whose affidavit it now relies, in determining the Fee. *See id.* at 77:13-17, 79:16-24; Cowan Dec. Ex. B, 4, 7; Cowan Dec. Ex. C, 1, 4 (Defendant testified under oath that it did not consult with or rely on documents, witness statements, studies, analyses, data, accounting reports, legislative findings, police reports, Village clerk memoranda or other information to determine the Fee amount, and did not consult or involve any Village employee, representative, official or third party in determining the Fee aside from the Village attorney). Lastly, the Village conceded under oath that it copied the Fee from the ordinance of the Village of Floral Park. *See* Cowan Dec. Ex. A at 71:8-72:2; Cowan Dec. Ex. B, 8; Cowan Dec. Ex. C, 4.

In contrast, the Village attorney's affidavit avers that "private investigators that [he has] utilized in the past charge at least one hundred ($100.00) for such a service." *See* Ryan Aff. ¶ 7. The attorney affidavit cites the salary of the Village Clerk and Superintendent of Buildings, "who is responsible for Code enforcement," and states that those annual salaries "equate to an hourly rate of pay equal to about $65.00." *See id.* ¶¶ 8-9. As such, the affidavit calculates, if both the Village Clerk and Superintendent of Buildings "were to expend up to an hour each with respect to the processing of a license application, maintenance of the 'no-knock' list and enforcement, the [Village's] expense for the fee would be an additional $130.00," and

14

therefore the $200 Fee is reasonable. *See id.* ¶¶ 9-10. In his reply affidavit, the Village attorney asserts, "based on [his] forty years of practice, [he does] have personal knowledge that the cost of a criminal background check conducted by a licensed private investigator in this area of the country is at least $100." Ryan Reply Aff. ¶ 9. The reply affidavit states that the fact that no commercial solicitation licenses have been sought or issued in the Village for "many years" lends itself to the fact that "exact costs are not available," but that the costs listed are "reasonable projections." *See id.* ¶¶ 12-14.

The majority of the assertions in both attorney affidavits depart from the Village's 30(b)(6) deposition testimony. To the extent either attorney affidavit contradicts the Village's previous deposition testimony, the Court will not consider it, either in support of its motion or in opposition to Aptive's cross-motion. With this limitation, the Court analyzes the merits of the parties' cross-motions.

### B.     Constitutionality of the Fee

The Court concludes that there are no triable issues of fact as to Plaintiff's claim that the Fee violates Aptive's free speech rights as a matter of law, and summary judgment in Aptive's favor is appropriate.

Door-to-door solicitation is a form of expression that is entitled to First Amendment protection. *See Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632, 100 S. Ct. 826, 833-34 (1980). In the First Amendment context, the Supreme Court has held that governmental entities may impose licensing fees relating to the exercise of constitutional rights when the fees are designed "to meet

15

the expense incident to the administration of the [licensing statute] and to the maintenance of public order in the matter licensed." *Cox v. New Hampshire*, 312 U.S. 569, 577, 61 S.Ct. 762, 766 (1941) (quotation marks omitted); *see Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013). Put another way, imposing fees on the exercise of constitutional rights is permissible when the fees are designed to defray, and do not exceed, the administrative costs of regulating the protected activity. *See Kwong*, 723 F.3d at 165; *Nat'l Awareness Found. v. Abrams*, 50 F.3d 1159, 1165 (2d Cir. 1995) ("Thus, fees that serve not as revenue taxes, but rather as means to meet the expenses incident to the administration of a regulation and to the maintenance of public order in the matter regulated are constitutionally permissible."); *E. Conn. Citizens Action Grp. v. Powers*, 723 F.2d 1050, 1056 (2d Cir. 1983) ("Licensing fees used to defray administrative expenses are permissible, but only to the extent necessary for that purpose."); *Int'l Women's Day March Planning Comm. v. City of San Antonio*, 619 F.3d 346, 370 (5th Cir. 2010); *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 259–61 (2d Cir. 2013) (upholding a toll bridge fee as "constitutional[ly] permissib[le]" in the "right to travel" context); *cf. Murdock v. Pennsylvania*, 319 U.S. 105, 113–14, 63 S.Ct. 870, 875 (1943) (striking down a license tax that was "not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question").

Here, the Village fails to set forth sufficient documentary or testimonial evidence to show that the Fee is designed to defray, and does not exceed, the administrative costs of regulating solicitor licensing. Rather, through attorney

16

affidavits alone, Defendant has provided generalizations and unsupported estimations as to how the Village decided on the Fee amount. The Village's Rule 30(b)(6) deposition testimony further attributes the Fee to guesses and estimates not based on research, analysis, accounting reports or any other data. *See* Cowan Dec. Ex. A at 43:6-12, 75:13-76:1, 79:21-24, 118:9-119:19, 124:24-125:9, 135:2-15. In fact, the only numbers cited are the salaries of Village employees likely to work on the issuance of solicitation licenses. *See* Ryan Aff. ¶¶ 8-9. However, such figures are provided in conjunction with approximations as to the number of hours the Village predicts those employees will work in this context, without consulting those employees. *See* Cowan Dec. Ex. A at 60:2-63:13, 106:13-24, 113:6-21; Cowan Dec. Ex. B, 4; Cowan Dec. Ex. C, 1. Further, Defendant has offered nothing to show that any meaningful or significant research regarding the Fee was conducted prior to its implementation. *See* Cowan Dec. Ex. A at 77:13-17, 78:3-8, 79:21-24; Cowan Dec. Ex. B, 7; Cowan Dec. Ex. C, 4.

Accordingly, Defendant's arguments fail as a matter of law. It has not provided evidence sufficient to justify the Fee, and has not established a factual basis for concluding that the $200 Fee is equal to the cost incurred in processing and issuing solicitation licenses. While the Court acknowledges that a fee, in some amount, may be constitutionally valid, Defendant has not done the requisite research and analysis, nor shown that is the case through evidence appropriately cited to at summary judgment. Accordingly, the Court finds the Fee unconstitutional, and recommends

17

that Plaintiff's motion for summary judgment be granted in full, and Defendant's motion for summary judgment be denied.

### IV. Conclusion

For the reasons set forth above, the Court respectfully recommends: (i) denying Defendant's Motion in its entirety; and (ii) granting Plaintiff's Motion in its entirety.

### V. Objections

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
        December 23, 2020           /s/ Steven I. Locke
                                    STEVEN I. LOCKE
                                    United States Magistrate Judge